**Tom J. KEHOE, Relator,**

v.

**MINNESOTA DEPARTMENT OF ECONOMIC SECURITY,
Respondent,**

**Commissioner of Economic
Security, Respondent.**

No. C4–97–494.

Court of Appeals of Minnesota.

Sept. 30, 1997.

Tom J. Kehoe, Oakdale, pro se Relator.

Minnesota Department of Economic Security, Yvonne Mulcahy, St. Paul, Respondent.

Kent E. Todd, St. Paul, for Respondent Commissioner.

Considered and decided by NORTON, P.J., and SCHUMACHER and WILLIS, JJ.

## OPINION

WILLIS, Judge.

Relator Tom J. Kehoe challenges the commissioner's representative's decision that he voluntarily quit his job with the Minnesota Department of Economic Security (MDES) without good cause attributable to the MDES.

## FACTS

Kehoe worked for the MDES from 1975 until October 1996, when he resigned. He accepted MDES's offer of a $10,500 incentive payment to participate in an early retirement plan and then filed for reemployment insurance benefits. An MDES claims representative concluded that Kehoe was disqualified from receiving reemployment insurance benefits because he voluntarily quit his job without good cause attributable to his employer. Kehoe appealed to an MDES reemployment insurance judge, who affirmed the claims representative's decision.

Upon further appeal, the commissioner's representative also determined that Kehoe quit his job voluntarily and without good cause attributable to the MDES and, therefore, was disqualified from receiving reemployment insurance benefits. Kehoe appeals by certiorari to this court.

## ISSUE

Did the commissioner's representative err in determining that Kehoe quit without good cause attributable to the MDES?

## ANALYSIS

■ When an individual quits employment, he is disqualified from receiving reem-

ployment insurance benefits unless there is good cause attributable to the employer for the decision to discontinue the employment. Minn.Stat. § 268.09, subd. 1(a) (1996). "Good cause" is defined as a reason that is substantial, reasonable, and compelling, not imaginary, trifling, or whimsical. *Ferguson v. Department of Employment Servs.*, 311 Minn. 34, 44 n. 5, 247 N.W.2d 895, 900 n. 5 (1976). Whether an employee had good cause to quit is a question of law subject to de novo review. *Ryks v. Nieuwsma Livestock Equip.*, 410 N.W.2d 380, 382 (Minn. App.1987).

■ Although it was Kehoe's own decision to accept early retirement, Kehoe contends he had good cause to quit attributable to the MDES because (1) some of his duties had been given to other agencies, (2) his advancement possibilities "had been quashed[,]" (3) he perceived that he eventually would have been laid off, and (4) the buy-out option was designed to put economic pressure on Kehoe to quit on the MDES's schedule, rather than his own.

This is a case of first impression in Minnesota.[1] But other jurisdictions have considered the issue and have concluded that employees who choose to terminate employment to accept buy-out incentives have quit without good cause attributable to their employers.

In *McArthur v. Borman's Inc.*, 200 Mich. App. 686, 505 N.W.2d 32 (1993), two employees of a supermarket chain were given a choice of accepting $16,000 as part of a buy-out plan by December 31, 1987, or continuing their employment under a new union contract. The employees accepted the $16,000 and were denied reemployment insurance benefits. The Michigan Court of Appeals concluded that the employees quit without good cause attributable to the employer:

Unemployment benefits are not designed to protect those who receive large cash settlements following voluntary separa-

---

1. *Cf. Reserve Mining Co. v. Anderson,* 377 N.W.2d 494, 496–98 (Minn.App.1985) (addressing issue of early retirement incentives in context of notifi- cation of layoff), *review denied* (Minn. Jan. 17, 1986).

tions, but to assist those who become unemployed through no fault of their own.

\*     \*     \*     \*     \*     \*

The employer provided a substantial monetary incentive and also made quitting more attractive by the threatened reduction to part-time status. Nonetheless, each claimant could have continued to work for the employer, and each chose not to do so.

\*     \*     \*     \*     \*     \*

A good personal reason does not equate with good cause \* \* \*. Neither claimant here was told she would be laid off if she rejected the buyout.

*Id.* 505 N.W.2d at 35–37 (citations omitted).

In *St. Joseph Health Ctr. v. Missouri Labor and Indus. Relations Comm'n*, 768 S.W.2d 123 (Mo.App.1988), an employee resigned during her employer's voluntary resignation program in order to receive a lump sum bonus of $1,500. She alleged that a rumor that her job was to be eliminated caused her to fear that if she did not resign she would have been laid off. The Missouri Court of Appeals determined that she

> had the choice of whether to remain employed or to accept the offer of St. Joseph to resign and receive a bonus. There was nothing in her resignation that was attributable to her work or her employer. There was no evidence that her resignation was anything but voluntary. The evidence is completely devoid of any good cause for Outersky leaving her employment except for her own desire to accept the offer of St. Joseph and voluntarily resign. The purpose of the employment security law is to benefit persons unemployed through no fault of their own. The purpose of the law is not served by paying unemployment benefits to persons who voluntarily resign without good cause attributable to their work or employers.

*Id.* at 127.

We find the reasoning of the Michigan and Missouri courts to be persuasive. Good cause to quit is generally found where an employer has breached the terms of an employment agreement. *Bestler v. Travel Co.*, 398 N.W.2d 611, 613 (Minn.App.1986). Here there was no evidence of a significant adverse action by Kehoe's employer. When an employee has the choice of remaining employed or voluntarily resigning and receiving a bonus, the termination of his employment is without good cause attributable to his employer.

**DECISION**

The commissioner's representative did not err in concluding that because Kehoe voluntarily resigned to take advantage of an early retirement plan, he did not have good cause to quit attributable to his employer.

**Affirmed.**