Kenneth C. MEYER, Appellant,

v.

CITY OF ST. PETERS and Division of Employment Security, Respondents.

No. ED 94882.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 19, 2011.

---

1.   All pending motions are denied.

Gordon D. Prinster, St. Charles, MO, for appellant.

City of St. Peters, St. Peters, MO, pro se.

Michael E.C. Pritchett (Div. of Employment Security), Jefferson City, MO, for respondents.

GEORGE W. DRAPER III, Judge.

Kenneth C. Meyer (hereinafter, "Claimant") appeals from the decision of the Labor and Industrial Relations Commission (hereinafter, "the Commission") denying him unemployment benefits. Claimant raises one point on appeal, arguing there is no competent and substantial evidence in the record to support a finding that he was discharged for misconduct connected with his work for attempted theft from his employer, the City of St. Peters (hereinafter, "the City"). We reverse and remand.

Claimant was employed by the City as a seasonal park maintenance worker in March 2008. On September 29, 2009, Claimant and a coworker, Larry Dickherber (hereinafter, "Coworker"), were restocking a concession stand at the City's Woodland Sports Park with paper supplies. The concession stand was operated by the St. Charles County Youth Soccer Association (hereinafter, "the soccer association"), a nonprofit group. A soccer association employee, Kenneth Carter (hereinafter, "Carter"), entered the concession stand and observed Claimant and Coworker inside. Coworker was eating a candy bar and filling a cup from the fountain soda machine. Claimant was in the process of reaching into a cooler and removing a sports drink. Carter did not comment on these activities; he only waited until they were finished restocking the stand and secured the stand after they left.

Carter told his wife about the incident and she told the executive director of the soccer association, who reported the incident to the St. Peters Police Department. An officer spoke with all of the parties and filed an incident report, although the soccer association did not press charges. Coworker admitted he took a candy bar and a fountain drink from the concession stand, but did not feel he did anything wrong because he had been offered soda and candy from concession stand employees several times in the past. Claimant gave an oral and written statement to the police.

In those statements, Claimant admitted he was in the process of removing a sports drink from the concession stand cooler, but returned the bottle when Carter came in. Claimant indicated the soccer association employees had offered soda and candy from the concession stands in the past and told him he could "grab one if [he] wanted." Claimant conceded he did not know if the concession stand employees had the authority to give away merchandise. The incident report indicated the officer attempted to confirm Claimant and Coworker's statements about being able to remove soda and candy, but the officer had not been contacted by the soccer association.

Claimant was discharged by the City because of this incident. Claimant filed an initial claim for unemployment benefits on November 30, 2009. The City contested the claim. A deputy determined Claimant was discharged for misconduct connected with work because of theft. Claimant appealed the deputy's decision to the Appeals Tribunal (hereinafter, "the Tribunal"), arguing he did not commit theft because he had no stolen property in his possession at the time. The Tribunal held a telephone hearing on February 18, 2010. After receiving testimony from Claimant, Coworker, and the City's human resources coordinator, and admitting the incident report, the Tribunal affirmed the deputy's decision. The Tribunal determined the City "had a reasonable expectation that Claimant not try to steal first quality merchandise from concessionaires doing business on its property." Claimant filed an appeal with the Commission, which upheld the Tribunal's determination that he had been discharged for misconduct. Claimant appeals.[1]

This Court's review of the Commission's decision in an unemployment compensation case is governed by Article V, Section 18 of the Missouri Constitution and Section 288.210 RSMo (2000).[2] *Shields v. Proctor & Gamble Paper Products Co.*, 164 S.W.3d 540, 543 (Mo.App. E.D.2005). This Court may modify, reverse, remand, or set aside the Commission's decision only when: (1) the Commission acted *ultra vires;* (2) the decision was procured fraudulently; (3) the facts found by the Commission do not support the award; (4) there was not sufficient competent evidence to support the award. *Zimmerman v. City of Richmond Heights,* 194 S.W.3d 875, 876 (Mo.App. E.D.2006). "The findings of the [C]ommission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." Section 288.210. We must examine the whole record to determine the sufficiency of the evidence to support the Commission's decision. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003); *Daniels v. State Div. of Employment Sec.,* 248 S.W.3d 630, 631 (Mo.App. S.D.2008). We are not bound by the Commission's conclusions of law or its application of the law to the facts. *Korkutovic v. Gamel Co.,* 284 S.W.3d 653, 656 (Mo.App. E.D.2009). We will, however, defer to the Commission's determination of the credibility of witnesses. *Zimmerman, supra.*

---

1. We remind attorneys when drafting their points relied on to review the dictates of Rule 84.04(d) and *Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978). *Hager v. Syberg's Westport,* 304 S.W.3d 771, 772 (Mo.App. E.D. 2010). Failure to conform with the mandates of Rule 84.04 results in unpreserved allega-

tions of error and can constitute grounds for the dismissal of an appeal. *Kuenz v. Walker,* 244 S.W.3d 191, 193 (Mo.App. E.D.2007).

2. All statutory references are to RSMo (2000) unless otherwise indicated.

■ In his sole point on appeal, Claimant argues the Commission erred in denying him unemployment benefits because there was no competent and substantial evidence in the record to support this finding. Claimant believes there was no evidence to support a finding he attempted to steal a sports drink from the concession stand that justified his discharge for misconduct.

It is Missouri's declared public policy to set aside unemployment reserves for the benefit of individuals unemployed through no fault of their own. Section 288.020.1. The provisions of Section 288.020 *et seq.* are intended to be construed liberally to accomplish the State's public policy. Section 288.020.2. To execute this policy, "[d]isqualifying provisions are construed strictly against the disallowance of benefits." *St. John's Mercy Health System v. Div. of Employment Sec.,* 273 S.W.3d 510, 514 (Mo. banc 2009). "In short, judicial interpretations of the unemployment statutes have required that an employee not have caused his dismissal by his wrongful action or inaction or his choosing not to be employed." *Croy v. Div. of Employment Sec.,* 187 S.W.3d 888, 892 (Mo.App. S.D. 2006).

■■ A claimant is prohibited from recovering unemployment benefits if he or she is discharged for misconduct connected with work. Section 288.050.2. "Misconduct" is defined by statute as:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his [or her] employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or

of the employee's duties and obligations to the employer.

Section 288.030.1(23). While a claimant generally bears the burden of demonstrating he or she is entitled to unemployment benefits, the burden shifts to the employer to prove misconduct connected with work when the employer asserts the claimant was discharged for misconduct. *Williams v. Enterprise Rent–A–Car Shared Services, LLC,* 297 S.W.3d 139, 142 (Mo.App. E.D.2009). The employer must show, by a preponderance of the evidence, that the claimant willfully violated the rules or standards of the employer or that the claimant knowingly acted against the employer's interest. *Venz v. Convergys Customer Management Group, Inc.,* 326 S.W.3d 554, 557 (Mo.App. E.D.2010). Whether a claimant is discharged for misconduct connected with work is a question of law that this Court reviews *de novo. Williams,* 297 S.W.3d at 142.

■ To satisfy Section 288.030.1(23), the Commission must find that a claimant's conduct was willful. *See Wieland v. St. Anthony's Med. Ctr.,* 294 S.W.3d 77, 79 (Mo.App. E.D.2009); *Scrivener Oil Co., Inc. v. Div. of Employment Sec.,* 184 S.W.3d 635, 641 (Mo.App. S.D.2006). An employee's willful violation of the employer's reasonable work rule constitutes misconduct. *Noah v. Lindbergh Inv., LLC,* 320 S.W.3d 212, 216 (Mo.App. E.D.2010). "A single instance of intentional disobedience of an employer's directive can constitute misconduct." *Id.* (quoting *Finner v. Americold Logistics, LLC,* 298 S.W.3d 580, 584 (Mo.App. S.D.2009)).

■ There is a distinction, however, between the violation of an employer's rule justifying the employee's discharge and the violation of an employer's rule that warrants a finding of misconduct connected to the claimant's work. *Venz,* 326 S.W.3d at 557. While poor workmanship,

lack of judgment, or irresponsible actions may justify an employee's discharge, "it does not necessarily provide a basis for disqualifying [an employee] from receiving unemployment benefits." *Comeaux v. Convergys Customer Management Group, Inc.*, 310 S.W.3d 759, 763 (Mo.App. E.D. 2010) (*quoting Scrivener*, 184 S.W.3d at 641). In the absence of evidence that the claimant deliberately or purposefully acted, there can be no finding the claimant committed an act of misconduct. *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 900 (Mo.App. E.D.2008).

The City failed to carry its burden of proof that Claimant's actions rose to the level of misconduct. The City's human resources coordinator testified she did not know Claimant personally, she was not present when the incident occurred, and she did not know or speak to Carter; she merely pointed out the contents of the incident report as proof of Claimant's misconduct. However, Claimant and Coworker gave uncontroverted testimony that soccer association employees had permitted city workers, including themselves, to help themselves to items in the concession stands. As such, neither felt they had done anything wrong in taking items from the concession stand on September 29th. The incident report even corroborates this testimony, stating: "I have attempted to confirm the statements made by both [Coworker] and [Claimant] that in the past [the soccer association has] allowed city employees to remove from the concessions candy and sodas. As of this date, I have not been contacted by either association."

Further, Claimant's testimony that he did not know if the concession stand employees had the authority to give away merchandise merely demonstrates Claimant's poor judgment in attempting to take items from the concession stand, not a purposeful act meant to deprive the soccer association of first quality merchandise. While Claimant's behavior may have justified the City terminating his employment, this behavior did not rise to the level of misconduct for the purposes of denying unemployment compensation. Claimant's point is granted.

The Commission erred in finding Claimant's actions amounted to misconduct which disqualified him from receiving unemployment benefits. Accordingly, we reverse and remand for the entry of an appropriate award.

GLENN A. NORTON, P.J., and KATHIANNE KNAUP CRANE, J., concur.